DAVID J. MILLSTEIN, Esq., State Bar #87878
TALIA B. SAYPOFF, Esq., State Bar #284704
MILLSTEIN & ASSOCIATES
100 The Embarcadero, Suite 200
San Francisco, CA 94105
Telephone: (415) 348-0348
Facsimile:  (415) 348-0336

*Attorneys for Plaintiff*
Jane Doe

## THE UNITED STATES DISTRICT COURT

## THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, as an individual,<br><br>                    Plaintiff,<br><br>          vs.<br><br><br>SAMUEL MERRITT UNIVERSITY, a<br>California Corporation, including<br>CALIFORNIA SCHOOL OF PODIATRIC<br>MEDICINE; and Does 1 through 100,<br><br>                    Defendants | Case No. 3:13-cv-00007-JSC<br><br><br>**PLAINTIFF/PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION**<br><br>**DATE: FEBRUARY 14, 2013<br>TIME: 9:00 A.M.** |

        NOTICE IS HEREBY GIVEN that on February 14, 2013[1] at 9:00 a.m. or as soon

thereafter as the matter may be heard in Courtroom F of the above-entitled Court, located at 450

Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Jan Doe will and hereby does move

this Court to for a temporary restraining order or preliminary injunction

---

[1] In the event the Court does not grant a TRO or expedited hearing, Plaintiff requests, in the alternative, that the Court place this matter on the calendar for a hearing on February 14, 2013, the same day the Court will hear Defendant's motion to dismiss.

This Motion is based upon the accompanying Memorandum of Points and Authorities, the Declaration of David Millstein, Esq., the Declaration of Jane Doe, as well as such other oral argument and documentary evidence as may be presented to the Court at the hearing of this Motion.

Respectfully Submitted,

Dated:  January 10, 2013          MILLSTEIN & ASSOCIATES

_/s/_____

David J. Millstein, Esq.
Attorneys for Plaintiff
JANE DOE

## I.   PETITION

Plaintiff JANE DOE. ("Plaintiff" or "Petitioner" or "Ms. Doe") respectfully petitions the above-entitled Court for the following temporary restraining order or preliminary injunctive relief against Defendant SAMUEL MERRITT UNIVERSITY ("SMU"); including a division of SAMUEL MERRITT UNIVERSITY, the CALIFORNIA SCHOOL OF PODIATRIC MEDICINE ("CSPM");and Does 1 through 100 on the First, Second, Third and Fourth Causes of Action of her Complaint, filed herein on December 20, 2012, prohibiting Defendant from enforcing its dismissal of Plaintiff from SMU CSPM, allow her to immediately resume her clinical coursework, and provide her the opportunity to retake the American Podiatric Medical Licensing Exam ("APMLE") Part I, without limitation as to the number of times she may take the exam.  Alternatively, Plaintiff moves to compel Defendant to grant Plaintiff inactive student status at SMU CSPM and place no limitation on the number of times she may take the APMLE Part I, enabling her to return to school upon successful completion of the exam.

Plaintiff brings this petition pursuant to the Federal Rules of Civil Procedure 65(a) on the grounds that Defendant has discriminated against Plaintiff on the basis of her disability by failing to make a reasonable modification to its policy requiring that Plaintiff pass the AMPLE Part I licensing exam within no more than three attempts and be dismissed from SMU if she

does not pass. Plaintiff's knowledge base (built over the last three years at SMU) is deteriorating with time and SMU would suffer no harm by allowing Plaintiff to return to enrolled status, complete her final year of coursework, and to continue taking the exam. Plaintiff requests a TRO or that a hearing on the motion for a preliminary injunction be expedited and set within three days time.[2]

## II. INTRODUCTION

Plaintiff requests injunctive relief pursuant to the Americans with Disabilities Act (42 U.S.C. § 12101 *et seq.*); Section 504 of the Rehabilitation Act (29 U.S.C. § 794 *et seq.*); California Government Code § 11135; and the Unruh Civil Rights Act (California Civil Code § 51 *et seq.*) prohibiting Defendant from enforcing Plaintiff's dismissal from the SMU CSPM program, and (1) grant Plaintiff active status and enable her to immediately begin attending her remaining clinical rotations, the next of which begins on February 4, 2013 while allowing her to continue to take the APMLE, without restrictions, or (2) only as a lesser alternative, grant Plaintiff inactive student status so she may continue to take the APMLE during the pendency of the case and, once she passes, allow her to attend remaining clinical rotations. Clinical rotations are generally either one month or three months long; the majority are one month. Plaintiff is requesting enrollment in the next round of clinical rotations which begins on February 4, 2013. (Doe Dec. ¶ 25).

In her Complaint, filed in the California Superior Court County of Alameda on December 20, 2012, Plaintiff sought to invoke numerous rights afforded her – including, but not limited to, her right to return to school and graduate with her degree – under the above-mentioned statutes. At trial, Plaintiff will ask the court to decide whether SMU's policy requiring that all students, including those with a recognized disability, must pass the licensing exam within three attempts or suffer dismissal from the program (even upon successful completion of three out of four years of coursework) is discriminatory. For this Motion for

---

[2] In the event the Court does not grant a TRO or expedited hearing, Plaintiff requests, in the alternative, that the Court place this matter on the calendar for a hearing on February 14, 2013, the same day the Court will hear Defendant's motion to dismiss.

Preliminary Injunction, the Court need only decide that Plaintiff may continue to attend her clinical rotations and/or attempt the APMLE during the pendency of litigation.    The administrator of the exam requires test-takers to be enrolled students, and therefore, in order to continue attempting the exam and resume her education, Plaintiff must, at a minimum, be granted inactive, enrolled status at SMU.

## III.  FACTS

Ms. Doe was a student enrolled in SMU's program from 2009 to 2012 pursuing a Doctor in Podiatric Medicine degree.  She has a recognized disability: Generalized Anxiety Disorder and Panic Disorder with Agoraphobia.  These disorders are recognized in the most recent Diagnostic and Statistical Manual of Mental Disorders ("DSM") edition IV as DSM-IV-TR 300.02 and DSM-IV-TR 300.21, respectively.  (Declaration of George Vroulis, Ph.D. in Support of Plaintiff's Motion for Preliminary Injunction ("Vroulis Dec.") ¶ 2).  Since the diagnosis on or about April 5, 2011, Plaintiff has received treatments that have proved effective in helping her to succeed in school despite her disability.  (Declaration of Ms. Doe in Support of Plaintiff's Motion for Preliminary Injunction ("Doe Dec.") ¶ ¶ 9-10).

Because of her disability, Ms. Doe was unable to pass the APMLE within three attempts. The nature of Plaintiff's anxiety disorder is such that the limitation placed on the number of times she may take the APMLE Part I generates extreme anxiety and hurts her performance on the exam.

When Ms. Doe enrolled in SMU's Doctor of Podiatric Medicine ("DPM") program in August 2009, she was not informed of SMU's requirement that students take and pass the APMLE Part I within three tries, or be dismissed from their program between the third and fourth years of study, risking forfeiture of tuition and costs.  (Doe Dec. ¶ 5).  Notably, the SMU Student Handbook for 2009-2010, even while it states that students must pass the exam in order to graduate, makes no mention of any limitation on the number of times a student is entitled to take the exam, and certainly does not mention the risk of dismissal or forfeiture of tuition.  *See* 2009-2010 SMU Student Handbook, page 58.   Moreover, the 2008-2009 SMU Student

Handbook – the controlling policy when Ms. Doe enrolled – does not mention passage of the exam at all.   *See* 2008-2009 SMU Student Handbook.

While the 2009-2010 CSPM Student Handbook mentions in vague terms that students will not be "allowed to continue on to their Spring semester" if they fail the October administration of the National Board of Podiatric Medicine Examination I (now called the APMLE Part I), it is not until 2011-2012 that SMU clearly spelled out in the Student Handbook that "[i]f a student fails to pass the APMLE Part I examination on the third attempt, the student will be dismissed from the University."   *See* 2011-2012 CSPM Student Handbook, page 15. Without the benefit of discovery, Plaintiff is unaware whether SMU ever amended University Policy to incorporate this requirement.

Ms. Doe is a bright, talented, promising young woman.  She earned her undergraduate degree at the very prestigious University of Texas and received an award for her senior thesis; a group project for which she was the team leader.  She also maintained a very high grade point average (GPA) in her postgraduate prerequisite courses for medical school.  (Doe Dec. ¶ 4).

Plaintiff has excelled in her coursework at SMU.  After receiving testing accommodations for her disability at the start of her second year, her term GPA rose from a 1.8 to a 3.6.  Plaintiff experienced anxiety surrounding test-taking in her courses at SMU, but the impact of her disability on her academics has become manageable with accommodations -- namely, that she is provided time-and-a-half and a private room in which to take exams -- and medication.  To date, she has passed all of her courses at SMU.  She has also successfully completed and passed numerous clinical rotations to date, including the Highland, Radiology, Diabetic and Private Office Rotations.  It is solely the AMPLE Part I licensing exam that has posed a special problem for her, as the peril of SMU's do-or-die "three strikes" policy ignites her anxiety and thereby dampens her performance.  However, it is noteworthy that Ms. Doe's APMLE Part I raw test scores have increased with accommodations; regrettably, weighted passing scores have varied, and her weighted scores have not met or exceeded the passing rate. (Doe Dec., ¶¶ 11 and 13).

During her first year at SMU, Plaintiff asked faculty for help in requesting testing accommodations. SMU discouraged Plaintiff and told her that seeking accommodations was a lengthy, tedious, expensive process. Much of the curriculum covered on the APMLE is taught during that first year, when Ms. Doe's learning was hindered due to lack of testing accommodations. Once Ms. Doe received testing accommodations, she was able to learn and absorb the tested material. Being deprived of accommodations during her first year of education set Plaintiff back further in terms of preparing for the APMLE. (Doe Dec., ¶ 6).

Ms. Doe received a job offer from a prestigious podiatric medical center. In fact, the owner of the medical center showed such confidence in Ms. Doe that she expressed a desire to make Ms. Doe her partner and eventually pass over the office to Plaintiff. (Declaration of Dr. Judith Rubin in Support of Plaintiff's Motion for Preliminary Injunction ("Rubin Dec.") ¶ 8).

On August 8, 2012, just before the start of her third year of the four-year program, Ms. Doe received a letter from an officer of SMU, Dr. John Venson, stating that she was dismissed because she did not pass the APMLE Part I external licensing exam within three attempts. As a result, she was barred from attending a third-year Biomechanics clinical course—for which she had already paid. (Doe Dec. ¶ 14).

After receiving Mr. Venson's notice of dismissal, Ms. Doe proceeded with SMU's internal process wherein students who believe they have been wronged may raise issues at an academic hearing called a grievance. At her grievance hearing on September 27, 2012, Plaintiff requested reinstatement – she asked to return to school and complete her coursework. She also asked for a reasonable modification: that no restriction be placed on the number of times she may take the APMLE Part I. Plaintiff expended many hours preparing her written and oral statements to present to the Student Grievance Committee. Her knowledge base was deteriorating and she did not want to have to start over at square one. She explained that she suffered from severe anxiety and asked that the school not hold this against her. (Doe Dec. ¶ 17).

SMU permitted Ms. Doe to attempt the APMLE a *fourth* time, on October 3, 2012, just six days after the grievance. SMU was willing to modify its hard-and-fast three attempts rule

for Ms. Doe.  Clearly, the limitation of three attempts could not be crucial to the success of SMU if it was already willing to reasonably modify its policy once to accommodate Ms. Doe. (Doe Dec., ¶ 18).

Ms. Doe returned home to Houston, Texas to be with her family during this anxiety-provoking time of waiting results from the APMLE and the grievance.  She was informed by the chair of the Committee she would hear news of her status regarding the grievance within a few days.  Weeks passed, and Plaintiff heard nothing.  On or about October 15, 2012, she inquired about the committee's decision via e-mail.  Plaintiff constantly checked her e-mail awaiting a response but heard nothing.  (Doe Dec., ¶ 18).

Ms. Doe never received any letter mailed to her home containing information about her status. ( Doe Dec., ¶20) .  SMU was well aware of the fact that she never received any such letter, as Ms. Doe continued to e-mail SMU officers requesting a decision.  Plaintiff and SMU had always corresponded via e-mail.  Plaintiff expected to receive such an important decision electronically as well as by U.S. mail.  She was waiting for SMU's response in order to determine whether she would file a request for a preliminary injunction with the court.  Had she been aware of SMU's decision earlier, she would have filed her request at that time.   (Doe Dec., ¶ 22).

On November 13, 2012, still unaware of her status, Plaintiff emailed the SMU's Academic Provost, Dr. Scot Foster, to request that she receive an answer to her grievance.  On November 14, 2012, Dr. Foster sent Plaintiff a one-sentence e-mail stating that her request was not possible along with an excerpt from the Student Handbook.  Oddly enough, Dr. Foster did not state that a letter was mailed to her home, nor did he attach the letter in his e-mail response. He did not indicate that a final decision had been issued and made no attempt to clarify.  (Doe Dec. ¶ 20).

On December 18, 2012, Plaintiff's counsel learned via SMU's counsel that a decision letter was sent to Ms. Doe's address in Oakland by mail. Plaintiff's counsel notified Ms. Doe immediately.  She was still in Houston, Texas at the time and never received the letter.  The space for signature upon delivery on the registered mail receipt was and still is blank.

On December 21, 2012, plaintiff filed this suit and asked for an order shortening time for hearing on the injunction on so it could be heard prior to the commencement of the school year. The Alameda County Superior Judge hearing the motion recognized the urgency of Ms. Doe's situation and granted—over Defendant's objection—her Motion to Shorten Time so the Court could hear her Motion for Preliminary Injunction on January 4, 2013, in time for the Spring semester.   (Declaration of David Millstein in Support of Plaintiff's Motion for Preliminary Injunction, ("Millstein Dec.") ¶ 5). Doe Dec., ¶ 22)

In order to circumvent the Superior Court's order and ensure Plaintiff's case would not be heard on the merits before classes started, Defendant waited almost two weeks –then filed its removal Notice on the day its Response was to be filed.   This procedural tactic clearly was designed to ensure delay.  Now in a further attempt to prevent this court from reaching the merits of the action, Defendant has filed a frivolous Motion to Dismiss, containing the implausible argument that Plaintiff's ADA claims are limited to a Writ of Mandate of the schools grievance procedure.  Defendant's argument is meritless for several reasons, including that plaintiff is not required by law or even by SMU's own Handbook to utilize SMU's grievance procedure to address her issues, *see* SMU Student Handbook at 101 ("The procedures below ***may*** be used by grievants who are enrolled as students on the main campus or any affiliated learning center of the University.") (emphasis added); and therefore California Code of Civil Procedure section 1094.5(a), relied upon by Defendant, does not apply.  CA Code Civ. Proc. § 1094.5(a) ("Administrative mandamus is available for review of "any final administrative order or decision made as the result of a proceeding in which *by law a hearing is required to be given, evidence required to be taken,* and discretion in the determination of facts is vested in the inferior tribunal."); *Pomona College v. Sup. Ct.*, 45 Cal. App. 4th 1716, 1727 n.10.  Here, plaintiff is challenging Defendant's policies and actions as discriminatory under the ADA; she is not merely challenging the merits of a grievance procedure.  *See id.* at 1724 n.4.

Clearly, defendant is using all available tactics to delay this matter and preventing a court from making a determination on Plaintiff's claim under the ADA.   A TRO and/or

preliminary injunction is necessary here to ensure that Defendant does not benefit as a result of its deplorable tactics and her education is not sacrificed.

## IV. THE COURT SHOULD GRANT A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION OR SET A HEARING FOR THE SAME WITHIN THREE DAYS.

Plaintiff moves this Court pursuant to Fed. R. Civ. P. 65(a) to issue a temporary restraining order (TRO) and/or an expedited hearing for a preliminary injunction prohibiting the Defendant from enforcing Ms. Doe's dismissal from the DPM program, to be heard before the start of a new set of clinical rotations on February 1, 2013.   Plaintiff should at least be afforded a hearing on the merits as to whether she can continue to attend school this semester.  Specifically, Plaintiff moves, pursuant to the Americans with Disabilities Act (42 U.S.C. § 12101 *et seq.*); Section 504 of the Rehabilitation Act (29 U.S.C. § 794 *et seq.*); California Government Code § 11135; and the Unruh Civil Rights Act (California Civil Code § 51 *et seq.*), for injunctive relief prohibiting Defendant from enforcing her dismissal from SMU CSPM program, and (1) grant Plaintiff active status and enable her to attend her remaining clinical rotations, in addition to providing her the opportunity to continue taking the AMPLE, without limitation, or (2) alternatively, grant Plaintiff inactive student status so she may continue to take the APMLE during the pendency of the case, and, upon passage of the exam, be reinstated her in clinical rotations.  In other words, Plaintiff wishes to preserve her last uncontested status as an enrolled SMU student.  *See Angotti v. Rexam, Inc.*, 2006 U.S. Dist. LEXIS 42104, 21-24 (N.D. Cal. June 14, 2006) (Injunctive relief that would simply preserve Plaintiff's last uncontested status is characterized as "prohibitory").

Generally, in order to prevail on a motion for preliminary injunction, Plaintiff must show: (1) proof that the threatened harm outweighs any damage the injunction may cause to the party opposing it; (2) irreparable harm in the absence of the injunction; (3) that the injunction, if issued, will not be adverse to the public interest; and (4) a substantial likelihood of prevailing on the merits.  *Aid for Women v. Foulston*, 441 F.3d 1101, 1115 (10th Cir. 2006).  If the movant establishes the first, second, and third factors, then the fourth factor – likelihood of success on

the merits – "is relaxed to require only that the movant raise questions so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate inquiry." *Longstreth v. Maynard*, 961 F.2d 895, 902 (10th Cir. 1992); *McElroy v. Simon Prop. Group*, 2008 U.S. Dist. LEXIS 69622, 14-15 (D. Kan. Sept. 15, 2008).

The relief requested is appropriate for injunction as SMU is prohibited from denying Plaintiff a "reasonable accommodation" that will provide her the same opportunity as other students to complete her education eventually pass the APMLE.  The ADA specifically contemplates that injunctive relief is appropriate to remedy acts of discrimination against persons with disabilities. The ADA incorporates the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000a-3, which state that whenever a person has engaged, or is about to engage, in a prohibited act, a temporary or permanent injunction is an appropriate remedy for the aggrieved party.  42 U.S.C. § 12188(a)(1); *see also D'Amico v. New York State Board of Law Examiners*, 813 F. Supp. 217 (W.D.N.Y. 1993); *Gonzalez v. National Bd. of Med. Examiners*, 60 F. Supp. 2d 703, 705 (E.D. Mich. 1999).

Here, issuance of a Preliminary Injunction is necessary because Ms. Doe can prove the first three factors and raise a substantial question as to success on the merits.

### A.    The Threatened Harm to Ms. Doe Outweighs Any Damage to SMU.

There is no question the threatened harm to Ms. Doe outweighs any damage the injunction may cause to SMU.  Allowing Plaintiff to attend clinics during the pendency of this litigation – coursework for which she has paid and in which she will excel – would not harm SMU in any way.   Alternatively, granting Ms. Doe inactive status so she may continue to take the APMLE could not conceivably harm SMU in any way.  Plaintiff, on the other hand, will be harmed immensely.

With the passage of time, Plaintiff's knowledge base is likely to deteriorate as her employment and career plans are being derailed.  If no injunction is issued, by the time the case is adjudicated, the remedy will be inadequate because Plaintiff will have lost her knowledge and will not be prepared to return to school at that time.  The nature of a medical education is cumulative and fast-paced.  (Doe Dec., ¶ 12).  Her education becomes less valuable with each

day it lies fallow.  Plaintiff has already been denied entry to her Summer and Fall clinical rotations.  Plaintiff has already been significantly harmed, and will be further disadvantaged if not allowed to resume her coursework immediately.

Plaintiff will also incur financial harms if she is not permitted to return to school.  She has already paid over $90,000 in tuition; a substantial investment for an aspiring young professional.  (Doe Dec. ¶ 14).  If she is not permitted the opportunity to return to her coursework, the $90,000 in tuition she has paid to SMU will be a sunk cost.

If not allowed to immediately resume her coursework, than she should at least be provided the opportunity to immediately begin preparing for the next APMLE, in order to eventually be provided the opportunity to complete her program.  SMU would have Plaintiff completely dismissed, rendering all of her hard work -- made even more difficult by her disability -- for naught.  She will be harmed immensely if her dismissal is upheld and she is not allowed to retake the exam, complete her education, and receive her diploma.  Even if she never passes the final licensing exam, the completion of a degree undoubtedly has a great amount of value -- both as a personal accomplishment, and as a means of professional advancement.  No better example exists than the Dean of the SMU CSPM, Dr. John Venson, who has achieved a measure of success at the academic level, despite the fact that he himself has never passed the licensing exam for, nor actually practiced, podiatric medicine.

Rather than being harmed, SMU will actually *benefit* from the requested preliminary injunction.  It will receive additional tuition money -- indeed, as noted, it has already received Plaintiff's tuition for her final year.  Further, it will eventually be able to add plaintiff to its graduation numbers, and maintain the high graduation rates it boasts of in its marketing materials.  http://www.samuelmerritt.edu/files/institutional_research/smu_factsheet_2012.pdf

###### B.   Ms. Doe Need Not Show Irreparable Harm, But Will Be Irreparably Harmed If No Injunction Is Issued.

Various district courts have concluded that a plaintiff suing under a federal statute that provides for injunctive relief, as the ADA does, need not demonstrate irreparable harm.  *Special*

*Education Services v. RREEF Performance Partnership-I*, 1995 U.S. Dist. LEXIS 18665 (N.D.Ill. 1995). This rule has also been followed in many areas outside the ADA. *Illinois Bell Telephone Co. v. Illinois Commerce Comm.,* 740 F.2d 566, 571 (7th Cir. 1984); *In re Chicago, Milwaukee, St. Paul and Pacific Railroad Co.*, 738 F.2d 209, slip op. at 6-7 (7th Cir. 1984) (permanent injunction); *Trailer Train Co. v. State Board of Equalization*, 697 F.2d 860, 868-69 (9th Cir.) (preliminary injunction), cert. denied, 464 U.S. 846, 104 S. Ct. 149, 78 L. Ed. 2d 139 (1983); *SEC v. Holschuh*, 694 F.2d 130, 144 (7th Cir. 1982); *Atchison, Topeka & Santa Fe Railway Co. v. Lennen*, 640 F.2d 255, 259-60 (10th Cir. 1981). This rule has been applied to private plaintiffs seeking an injunction under 47 U.S.C. § 401(b). *South Central Bell Telephone Co. v. Louisiana Public Service Commission*, 570 F. Supp. 227 (M.D. La. 1983); *New England Telephone & Telegraph Co. v. Public Utilities Commission*, 570 F. Supp. 1558 (D. Maine 1983).

Here, Plaintiff is suing under the ADA, a federal statute that provides for injunctive relief under 42 U.S.C. § 12188(a). Thus, Plaintiff is not required to show irreparable injury. However, if the court finds otherwise, there is no question Plaintiff will be irreparably harmed if no injunction is issued.

To constitute irreparable harm, an injury must generally be certain, actual, and not merely theoretical. *Universal Engraving, Inc. v. Duarte*, 519 F. Supp. 2d 1140, 1148 (D. Kan. 2007). Plaintiff's harm could not be more certain. She has already been barred from attending the Summer and Fall semesters of 2012, and now the upcoming Spring term which begins on January 7, 2013. Plaintiff is already set up to lose an entire year of schooling as a result of SMU's arcane policy. If Plaintiff is not permitted to at least take the exam additional times, she will never be allowed to finish at SMU.

By denying Ms. Doe the opportunity to pass the licensing exam and/or earn her degree, SMU denies her the opportunity to pursue her career. Money damages could not possibly replace the value of an education and a graduate degree. The benefit Ms. Doe would reap from retaking the APMLE, returning to school, finishing her coursework, and receiving her degree are unquantifiable as they would open a world of career opportunities for her. Without a TRO

or preliminary injunction, Ms. Doe's past three years of complete schooling are rendered moot. All of the hours spent studying, attending classes and clinics, and preparing for and taking exams would be for naught.  Ms. Doe will be irreparably harmed if her education is disrupted and her dismissal from school is upheld.  She should be allowed to return to her coursework or at least begin her preparation for the upcoming APMLE, effective immediately.

A preliminary injunction is necessary to allow Ms. Doe to attend clinics because she has completed a significant amount of her schooling and if she is interrupted now, she will lose significant ground.  In order to graduate, Plaintiff needs to finish her remaining year and a half of clinical rotations, for which she needs to have the material she has learned thus far fresh in her mind.  This course of study is not designed to have a break—it is supposed to be continuous—applying academic knowledge to practical, clinical situations. (Doe Dec., ¶ 12).  In the years it could take to litigate this case, her knowledge base will deteriorate.  Especially for a student with her condition, a significant break constitutes a new impediment and will create more anxiety.

If Plaintiff's request for a TRO or preliminary injunction is denied she will be significantly and permanently harmed: she will be unable to complete her degree, negatively affecting her future career and her her future health.

**C.    Injunctive Relief Is Not Adverse To The Public Interest**

Issuance of a preliminary injunction is not adverse to the public interest.  In fact, public policy favors the injunction.  California courts and its legislature have long recognized the importance of allowing students to stay in school and/or continue their studies pending judicial proceedings.  Here, rather than requesting a waiver from SMU's policy requiring that students pass the AMPLE Part I midway through their clinical program, Plaintiff merely asks to be enrolled and provided the opportunity to complete her degree, while she is also given a reasonable opportunity to pass the APMLE, taking into account her disability.

Under federal and California education law, a disabled student is entitled to remain in his or her current educational placement pending the completion of judicial proceedings.  (20 U.S.C. §1415(j); 34 C.F.R. §300.518(a); Calif. Ed. Code §§48915.5, 56505(d).)    This is

commonly referred to as "stay put."  The governing statute, 20 U.S.C. §1415(j), requires the state to maintain the student's "current educational placement" during the course of "any proceeding conducted pursuant to this section."  As recognized by the Ninth Circuit Court of Appeals, the stay put provision acts as a powerful protective measure to prevent disruption of the person's education throughout the dispute process:  "there is a heightened risk of irreparable harm inherent in the premature removal of a disabled child to a potentially inappropriate educational setting."  *Joshua A. v. Rocklin Unified School District*, 559 F.3d. 1036, 1040 (9th Cir. 2009).  The "stay put" statute evidences California's long-standing appreciation of the fact that a student's education should not be interrupted.  Injunctive relief requiring SMU to reinstate Ms. Doe's enrollment would serve not only Ms. Doe's interest but also the public interest.

### D.    It Is Substantially Likely That Ms. Doe Will Prevail At Trial

To establish a claim under the ADA, Plaintiff must demonstrate (1) that the Defendant is subject to the requirements of the Act; (2) that Plaintiff has a "disability" as contemplated by the Act; and (3) that Defendant failed to make reasonable modifications to its policy or practices to accommodate Plaintiff's disability and Defendant has not demonstrated that such modification would fundamentally alter the nature of the services Defendant provides.  42 U.S.C. § 12182; *see Thomas by & Through Thomas v. Davidson Academy*, 846 F. Supp. 611, 617 (M.D. Tenn. 1994).  Ms. Doe has a recognized disability and SMU is required by law to make a reasonable modification of its policy, allowing Plaintiff to continue her clinical programs and to take the APMLE without restrictions.  She is requesting an academic modification regarding an external licensing examination that would in no way adversely affect the academic standards of SMU.

### 1.    SMU Is Subject To The Requirements Of The Americans With Disabilities Act.

Title III of the ADA applies to any "place of public accommodation" which includes but is not limited to "a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education."  42 U.S.C. § 12181(7)(J).  The division of SMU that

Plaintiff attended is a postgraduate private school and SMU is thus subject to the requirements of the ADA.

      **2.**   **Ms. Doe Has A Disability Contemplated By The Act.**

Under the ADA, 42 U.S.C. § 12102(2), "disability" means: "(a) A physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12102.  The concept of "disability" is to be read broadly.  *Peters v. Univ. of Cincinnati College of Med*., 2012 U.S. Dist. LEXIS 126426 (S.D. Ohio Sept. 6, 2012).  The ADA was designed to cover a broad range of individuals as emphasized by the 2008 Americans with Disabilities Amendment Act, which specifically addressed "lower courts [which] incorrectly [found] in individual cases that people with a range of substantially limiting impairments are not people with disabilities."  Pub. L. No. 110-325, § 2(a)(4), (5), and (6).  Here, as set forth below, Plaintiff was not only "regarded as having an impairment" under § 12102(1)(c), but her mental impairment has also "substantially limit[ed] one or more of [her] major life activities," pursuant to § 12102(2)(a).

          ***Plaintiff was "regarded as having an impairment" under § 12102(1)(c).***

A person is "regarded as having an impairment" under § 12102(1)(C) if she "establishes that [she] has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment *whether or not* the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A) (emphasis added).  *Forbes v. St. Thomas Univ., Inc*., 768 F. Supp. 2d 1222, 1231 (S.D. Fla. 2010).

SMU regarded Ms. Doe as having an impairment.  In July 2011—once she found the appropriate office to pursue a request—Ms. Doe requested reasonable accommodations from SMU on the basis of her diagnosis with Generalized Anxiety Disorder and Panic Disorder with Agoraphobia, a recognized disability.  SMU approved certain accommodations for Plaintiff: time-and-a-half and a private room in which to take exams.  Plaintiff took at least 20 exams on between Fall 2011 and Spring 2012 with reasonable accommodations of time-and-a-half and a

private room because of her disability.  SMU clearly regarded her as having such an impairment and gave her accommodations because of it.  (Doe Dec., ¶ 10).

### *Plaintiff's mental impairment has also "substantially limit[ed] one or more of [her] major life activities," pursuant to § 12102(2)(a).*

Moreover, even though only one prong of the "disability" test needs to be satisfied, Ms. Doe also qualifies as having an impairment that substantially limits a major life activity.  At least one court has concluded that **test-taking is a major life activity.**  *See Bartlett v. New York State Bd. of Law Examiners,* 970 F. Supp. 1094, 1117 (S.D.N.Y. 1997), *aff'd in part and vacated in part*, 156 F.3d 321 (2d Cir. 1998), *vacated*, 527 U.S. 1030 (1999), *aff'd in part and vacated in part*, 226 F.3d 69, 79 (2d Cir. N.Y. 2000).  In *Bartlett*, the court stated, "But in the modern era, where test-taking begins in the first grade, and standardized tests are a regular and often life-altering occurrence thereafter, both in school and at work, I find test-taking is within the ambit of 'major life activity.'"  *Id.*  In any event, both learning and working are well-recognized "major life activities," both of which are also implicated here.  28 C.F.R. § 35.104 (**year**).  *See Bartlett v. New York State Bd. of Law Examiners*, 226 F.3d 69, 79 (2d Cir. N.Y. 2000).   When considering whether a plaintiff is substantially limited in the major life activity of *working*, the plaintiff must be compared to "the average person having comparable training, skills and abilities."  29 C.F.R. § 1630.2(j)(3)(i).  *See Bartlett,* 226 F.3d at 82-84.

SMU required Plaintiff to pass a licensing exam in order to return to school, resume learning, and eventually graduate and secure work.  Her disability impedes her ability to pass this exam under the strict "make-or-break" limitation imposed by Defendant.  Thus, Ms. Doe's disability has precluded her from learning and working.  There is no doubt that Ms. Doe is an individual whom the legislature intended to protect.

### 3.    SMU Has Failed To Make Reasonable Modifications.

The Americans with Disabilities Act sets forth the criteria for whether an accommodation is reasonable: whether it is "necessary" for the disabled individual, and whether it would "fundamentally alter the nature of" the services.  42 U.S.C. § 12182(b)(2)(A)(ii); *PGA*

*Tour, Inc. v. Martin*, 532 U.S. 661 (2001).  As noted, Plaintiff does not request a waiver of SMU's policy requiring that students take and pass the APMLE Part I, as unfounded as that policy may be.[3]  Ms. Doe's disability requires that SMU reenroll her in her clinical programs, so that she may utilize the knowledge she has built throughout her first three years of study to complete her degree in a reasonable amount of time.  In the very least, SMU policy should be modified to allow Plaintiff to take the exam as many times as she would like, until she passes or voluntarily decides to discontinue.  This latter modification would allow her at least the *chance* to *potentially* pursue her education.  None of the relief requested would fundamentally alter SMU's educational services.  Without this chance, her education ends abruptly and prematurely.

### a. It Is Reasonable To Suspend The Three Strikes Rule In Light Of Ms. Doe's Disability.

Although neither the Americans with Disabilities Act nor the courts have defined the precise contours of the test for reasonableness, it is clear that the determination of whether a particular modification is "reasonable" involves "a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question." *Staron v. McDonald's Corp.*, 51 F.3d 353, 356 (2d. Cir. 1995); *Fortyune v. Am. Multi-Cinema, Inc.,* 364 F.3d 1075 (9th Cir. Cal. 2004).  "Reasonableness is not a constant." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 795 (1st Cir. 1992).  The issue is not what would be reasonable in a general sense, but what would be reasonable given the *individualized facts* before the court.  *Zukle v. Regents of the Univ. of California*, 166 F.3d 1041, 1048 (9th Cir. 1999).

The totality of the circumstances in this case weighs heavily in favor of the modification requested here.  Since receiving accommodations, Plaintiff has excelled in her schoolwork and has met all internal SMU requirements to graduate; she has *only* failed to meet the requirement that she pass the external licensing exam requirement within three attempts—and that failure is directly linked to the extraordinary anxiety this "make or break" test entails.  (Doe Dec., ¶ 13).

---

[3] It is noteworthy that the arbitrary limit of three attempts is not imposed by the licensing organization; rather, it is limit imposed by SMU without validation or statistical measure.

The question is not whether it is reasonable for SMU to generally require that the greater student body pass the APMLE within three times.  That is not at issue here.  A stairway is reasonable for the general populous, but is unreasonable for a person bound to a wheelchair.  A standard textbook is reasonable for a typical student, but is unreasonable for a visually impaired student.  Similarly, the three strikes rule may be reasonable for the overall student body, but it is not reasonable for Ms. Doe given her disability.

SMU did not prepare students to pass the exam nor did it offer resources, remedial courses or tutoring as its peer universities do.  While the lack of preparation and resources posed problems for all students, the effect it had upon a disabled student with an underlying anxiety disorder is obviously profound.  (Doe Dec., ¶ 9).  SMU set Plaintiff up to fail.

Plaintiff is not questioning SMU's right to impose graduation requirements.  Notably, Ms. Doe does not request here that she be completely exempt from the AMPLE requirement , but merely requests a reasonable modification of the rule restricting the number of times SMU allows students to take the exam.  SMU is required to make reasonable modifications in the case of disabled students.  Given Ms. Doe's anxiety disorder, SMU is required to reasonably modify its policy and place no restriction on the number of times she may takes the external licensing exam.   To dismiss Ms. Doe because of her disability and to refuse her the reasonable modification is deplorable.

**b.   The Modification Is Necessary To Give Ms. Doe Access To SMU's Services.**

The requested modification is necessary if it gives disabled persons access to the same services that others enjoy.  *PGA Tour, Inc. v. Martin*, 532 U.S. 661 (U.S. 2001); *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 311 (1st Cir. 2003).

Here, unless the three strikes rule is suspended, Ms. Doe will remain dismissed from SMU and will have no access to its services.  The only way to allow Ms. Doe access to the same services others enjoy for SMU is to reasonably modify its policy, reenroll her, and allow her to attempt the exam again.

### c.   **It Is Not A Fundamental Alteration Of SMU's Services To Accommodate Ms. Doe's Disability.**

A plaintiff has the burden of showing the existence of a reasonable rule modification that would enable her to participate in the subject activity.  *Matthews v. NCAA*, 179 F. Supp. 2d 1209, citing *Zulke*, 166 F.3d at 1048.  Once she meets this burden, the school must show that Ms. Doe's requested accommodation would fundamentally alter the nature of the school's program.  *Zukle* at 1048.

Here, Plaintiff has pointed to a reasonable accommodation: that she be allowed to take the examination without a limitation in order to ultimately be permitted to continue in the program.   This accommodation does not "fundamentally alter the nature of the school's program" and it is unlikely the defendant could ever carry its burden.   The external examination itself -- which is created and administered by, a separate corporate entity, Prometric, In., and which is "recognized or utilized by legal agencies governing the *practice* of podiatric medicine in the states, provinces, and federal agencies" -- is difficult to characterize as an "an essential aspect" of SMU's *educational* program.  *PGA Tour*, 532 U.S. at 682-83; *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02 (2002); *Matthews v. NCAA*, 179 F. Supp. 2d 1209 (E.D. Wash. 2001).

Prometric imposes no limitation on the number of times a student can take the exam, nor is there any evidence that repetitive testing is disapproved by it. *See* The National Board of Podiatric Medical Examiners, *American Podiatric Medical Licensing Examination (APMLE)*, available at http://www.apmle.com/images/NBPME_Part_I_and_II_CIB_20110802_2.pdf .

Although courts extend deference to truly academic assessments of students, this does not "allow academic decisions to disguise truly discriminatory requirements."  The educational institution has a "real obligation . . . to seek suitable means of reasonably accommodating a handicapped person and to submit a factual record indicating that it conscientiously carried out this statutory obligation."  *Zukle,* 166 F.3d at 1048, *Wynne I*, 932 F.2d at 25-26.  Here, the record indicates the institution delayed or frustrated providing accommodations and when faced with a student grievance as to its rule, and did not even follow its own process in providing the

student with a decision.  Clearly, this does not demonstrate a "conscientious" effort by the institution.

It would not be a fundamental alteration of services for SMU to allow an unquestionably disabled student, such as Ms. Doe, to continue to take the APMLE Part I with no restriction placed on the number of times she may take the exam.  The imposition of a requirement that Ms. Doe pass the APMLE Part I within three attempts only exacerbated her anxiety, making each attempt at passing less and less likely.  (Vroulis Dec. ¶ 4).

The requested accommodation does not lower academic standards: it would not eliminate the examination, simply the arbitrary three/four-time limit.   There is no compelling reason why a student with a d*emonstrated anxiety disorder must be limited to three or four attempts*.    In fact, the SMU Academic Provost stated that "a couple of years" ago, there was no such three strikes requirement imposed at SMU. (Doe Dec. ¶ 7). In addition, many peer podiatry programs place no such limitations on the number of times a student may take the exam. SMU's priorities are out of line; it should never put its desire for ratings and statistics ahead of the success and well-being of its students.

SMU should have reasonably accommodated Plaintiff after her first failures of the APMLE by offering remedial classes or extra preparatory help as many of its peer universities do, as set forth in the Complaint.  The fact that SMU offered no basic exam preparation for the entire student body despite repeated requests by students for such assistance is no shield.  SMU cannot take refuge in the fact that they offered poor preparation across the board.

Ms. Doe will not be given any advantage over other non-disabled students if she is afforded the opportunity to return to her studies and to take the licensing exam as many times as necessary.   Ms. Doe's disability unquestionably substantially impairs her performance and inhibits her ability to succeed.  Non-disabled students are not faced with such a hurdle.  Her test results are a misleading and inadequate representation of her knowledge base and abilities— which is the most likely explanation as to why she has successfully passed her academic requirements once her disability was treated, but has not passed the more anxiety provoking "make-it-or-break-it" exam.  This three-strikes rule is arbitrary, unnecessary, and unreasonable

as it applies to Plaintiff given her disability.  It is reasonable for SMU to allow Plaintiff to take the exam as many times as is necessary in order to pass.

In most cases, where the fundamental mission is not altered, the accommodation is deemed reasonable.  *PGA Tour*, 532 U.S. at 683.  A modification of rules for a disabled participant might constitute a "fundamental alteration" in two ways: first, an alteration affecting an essential aspect of a defendant's policies or programs would be unacceptable even if applied to everyone equally; second, even a minor change might be unacceptable if it gave a disabled individual an advantage over others.  Thus, Ms. Doe is not requesting "special treatment" in the form of a complete waiver of the APMLE requirement, as "unessential" to her education as it may be.  She is merely asking for the opportunity to continue her program and ensure her successful completion of a degree for which she has worked so hard.  *Cf. Zukle* 166 F.3d at 1050-51 (upholding as "rationally justifiable" a medical school Board or Regent's decision that the plaintiff's requested *extension and interruption* from her medical "clerkship," would have been a substantial alteration of a medial school's policies.)   This requires the reasonable modification to the policy's limitation on the number of times a student may take the exam, that currently results in the fatal consequence of dismissal.

### 4.   SMU Violated The Rehabilitation Act Of 1973, California Government Code § 11135 And The Unruh Civil Rights Act.

Plaintiff is entitled to injunctive relief under Section 504 of The Rehabilitation Act of 1973 ("The Rehabilitation Act"), California Government Code § 11135 and The Unruh Civil Rights Act, as their requirements are substantially similar to those of the ADA.  To establish a claim under the Rehabilitation Act, a plaintiff must demonstrate a similar set of elements to those the plaintiff is required to demonstrate under the ADA.  *See E.E.O.C. v. AIC Sec. Investigation, Ltd*., 820 F. Supp. 1060, 1064 (N.D. Ill. 1993).  Under the Rehabilitation Act, Plaintiff must additionally show she is "otherwise qualified" to participate in the program and that she was discriminated against solely on the basis of her disability.  *Id.*  Ms. Doe has shown she is otherwise qualified given her good academic standing and postgraduate job offer.  Further, Ms. Doe's disability has impeded her ability to pass the licensing exam.  She was

dismissed from SMU because she failed the licensing exam.  Thus, she was dismissed solely on the basis of her disability.

The California Government Code § 11135 is in place to extend the protections of the ADA to entities that receive funding from the state, as SMU does.  Finally, pursuant to California Civil Code § 51(f), a violation of the ADA also constitutes a violation of The Unruh Civil Rights Act so long as Defendant is a business establishment of any kind, which SMU is. All of these above-mentioned laws allow for injunctive relief.

**V.**

**SMU'S FAILURE TO RENDER A DECISION AS TO THE GRIEVANCE IN A REASONABLY TIMELY MANNER WAIVES ANY RIGHT TO CONTEST THIS INJUNCTION**

SMU's argument Plaintiff has been dismissed is based upon the assumption that the University's internal procedures have a binding effect is without merit. The school provides a grievance procedure which it claimed Ms. Doe needed to adhere to in order to raise these claims. (Declaration of David Millstein in Support of Plaintiff's Motion for Preliminary Injunction, ("Millstein Dec.") ¶ 3) Plaintiff participated in this process, submitted an extensive brief, and attended a hearing.  (Doe Dec., ¶ 20).

Although SMU claims to have already dismissed Plaintiff, that action is not clear and is probably invalid.  Defendant failed to promptly respond to her grievance, and when it did finally respond, it bizarrely sent a letter through registered mail to an address at which Plaintiff was not staying at the time.  Defendant received no confirmation of receipt.  When Plaintiff inquired via e-mail about her status after the letter had been mailed, making it clear she had not received the letter, no one at SMU bothered to reference the letter or offer any clarification. (Doe Dec., ¶ 20)

Although the grievance procedure is not and cannot be preclusive of a lawsuit, the failure of Defendant to meaningfully respond in a timely manner to the grievance constitutes a waiver of its rights.  *Egert v. Connecticut General Life Ins. Co*., 900 F.2d 1032, 1039 (7th Cir. Ill. 1990); *Pepsi-Cola co. v. Steak 'N Shake, Inc*., 981 F. Supp. 1149, 1155 (S.D. Ind. 1997). These actions show the bad faith of SMU and its lack of regard for the ADA.

# VII.
# CONCLUSION

This is not a case about a student who simply can't measure up. This is a case about a promising student with a disability that has a discreet effect of increasing anxiety during one specific "make or break" test. The proof – that Ms. Doe can earn a 3.6 GPA in coursework but struggles with this one exam – is incontrovertible. Moreover, as discussed *supra*, page _, Defendant continues to strategically use procedural methods -- including the filing of a meritless motion to dismiss -- to delay this action and prevent the Court from reaching the merits of Plaintiff's ADA claim. Defendant should not benefit from its irresponsible tactics.

Based on the foregoing, Plaintiff/Petitioner respectfully requests this Court to issue a TRO prohibiting Defendant from enforcing her dismissal from SMU CSPM program, and (1) grant Plaintiff active status and enable her to attend her remaining clinical rotations, the next of which begins on February 4, 2013, in addition to providing her the opportunity to continue taking the AMPLE, without limitation, or (2) alternatively, grant Plaintiff inactive student status so she may continue to take the APMLE during the pendency of the case and, upon passage of the exam, be reinstated her in clinical rotations.

In the least, Plaintiff deserves a hearing on whether she may continue her clinical rotations this semester. Thus, in the event the Court does not grant a TRO, plaintiff requests an expedited hearing as to whether she is entitled to a preliminary injunction prior to February 1st, so that she can start clinical rotations that start that day. Should the Court determine an expedited hearing is not warranted, Plaintiff requests that it place the matter on the calendar for a hearing on the motion for preliminary injunction for February 14, 2013, the same day it will hear Defendant's motion to dismiss.

Respectfully Submitted,

Dated: January 10, 2013          MILLSTEIN & ASSOCIATES


__/s/_____
David J. Millstein, Esq.
Attorneys for Plaintiff
JANE DOE